ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PABLO A. TORO MATOS<br>RECURRENTE<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>RECURRIDO | KLRA202500164 | Revisión Administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm:<br>B-1447-24<br><br>Sobre: Proyecto para la Pre Reinserción a la Libre Comunidad |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de mayo de 2025.

Comparece ante esta Curia, por derecho propio y de forma *pauperis,*[1] Pablo Toro Matos (señor Toro Matos o recurrente) y solicita que revisemos la *Respuesta al Miembro de la Población Correccional* que la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR o recurrido) notificó, el 3 de diciembre de 2024. En ella, el DCR dispuso que, la *Solicitud de Remedio Administrativo* (Núm. B-1447-24), sobre un referido al Proyecto para la Pre-Reinserción a la Libre Comunidad (Proyecto para la Pre-Reinserción), aún está siendo evaluada.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos el dictamen impugnado.

**I.**

Se desprende del expediente ante nuestra consideración que, el 11 de octubre de 2024, el señor Toro Matos instó la *Solicitud de Remedio Administrativo* (Núm. B-1447-24) ante el DCR, recibida el

---

[1] Mediante una *Resolución,* emitida el 26 de marzo de 2025, autorizamos a Pablo Toro Matos a litigar como indigente y lo eximimos de cancelar los aranceles correspondientes.

21 de octubre de 2024. Resultado de lo anterior, el 3 de diciembre de 2024, el DCR notificó su *Respuesta al Miembro de la Población Correccional* en donde hizo constar que, el referido del señor Toro Matos al Proyecto para la Pre-Reinserción aún está siendo evaluado. Añadió que, "[…] tan pronto se reciba la respuesta final usted será debidamente orientado […]"[2]

En desacuerdo, el 13 de diciembre de 2024, el señor Toro Matos presentó una *Solicitud de Reconsideración* ante el DCR. En ella expresó su inconformidad con el pronunciamiento del recurrido. En particular, en cuanto a su demora en emitir una respuesta final que atienda su referido al Proyecto para la Pre-Reinserción. A esos efectos, el DCR acogió el petitorio de reconsideración y, el 14 de febrero de 2025, notificó la *Resolución de Reconsideración* mediante la cual confirmó su dictamen previo y formuló las siguientes determinaciones de hechos:

1. El recurrente present[ó] Solicitud de Remedios Administrativos el 21 de octubre de 2024 ante el Evaluador de Remedios Administrativos, Maribel García Charriez de la Oficina de Bayamón. En su escrito [sic] status de su referido al Programa de Reinserción Comunitaria.

2. El 22 de octubre de 2024 se hizo Notificación dirigida a la Sra. Enid Rosado Guadalupe, Supervisora Unidad Sociopenal, Institución Correccional Bayamón 501.

3. El 18 de noviembre de 2024 se recibió respuesta por parte de la Sra. Yazmin Cordero Morales, Supervisora Unidad Sociopenal, Institución Correccional Bayamón 501.

4. El 2 de diciembre de 2024 se hace la entrega al recurrente del Recibo de Respuesta.

5. El 13 de diciembre de 2024, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que está [en] desacuerdo con la contestación recurrida.

6. Se acoge la petición de reconsideración el 9 de enero de 2024.[3]

Sobre tales bases, el DCR notificó la *Resolución* impugnada, en la cual, amplió y confirmó la *Respuesta al Miembro de la Población Correccional.* A esos efectos, hizo constar: "[s]e orienta al recurrente

---

[2] Véase, Anejo 2 de la Moción en Solicitud de Revisión Judicial.
[3] Véase, Anejo 5 de la Moción en Solicitud de Revisión Judicial.

que conversamos con el personal del Proyecto para la Pre Reinserción a la Libre Comunidad en cuanto al status del caso. Primeramente, se nos indicó que en estos momentos no hay espacios disponibles en el programa. Próximamente le ll[e]gar[á] la contestación oficial del programa."[4]

Inconforme aún, el señor Toro Matos insta el recurso de epígrafe intitulado, *Moción en Solicitud de Revisión Judicial* y le imputa al DCR la comisión del siguiente error:

> Erró la agencia recurrida al no emitir una respuesta adecuada a la Solicitud de Remedio Administrativo del recurrente y utilizar como fundamento la falta de espacios en el programa de desvío al que fue referido el recurrente, entendiéndose que sería absurdo denegar dicho referido al programa cuando ha sido el mismo DCR el que lo refirió al programa luego de que el recurrente cumpliera con los requisitos y ajustes necesarios de su plan institucional trazado.

En cumplimiento con nuestra *Resolución,* la Oficina del Procurador General de Puerto Rico, en representación del DCR, comparece mediante un *Escrito en Cumplimiento de Resolución.* Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. La Revisión Judicial y la Doctrina de la Deferencia Judicial**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. Ahora bien, en el ejercicio de tal facultad, el foro apelativo está obligado a ser deferente a las determinaciones de los organismos administrativos en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, resuelto el 27 de marzo de 2025. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los

---

[4] *Íd.*

márgenes de las facultades que le fueron delegadas por ley. *Jusino Rodríguez v. Junta de Retiro del Gobierno de Puerto Rico,* 2024 TSPR 138, resuelto el 26 de diciembre de 2024. Por último, permite a los foros judiciales velar que los entes administrativos den cumplimiento a los mandatos constitucionales, en especial, el debido proceso de ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).

Como se sabe, las agencias administrativas son en muchas ocasiones los primeros intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Oficina de Ética Gubernamental,* 2024 TSPR 130, resuelto el 10 de diciembre de 2024. Ahora bien, son los tribunales los que gozan de facultad para interpretar las leyes y la Constitución. *Íd.* Por consiguiente, ante una interpretación de la agencia que produzca resultados incompatibles o contrarios a su política pública o a su propósito interpretado, la deferencia cede ante la interpretación administrativa. *Íd.*

Por lo tanto, al revisar una actuación de una agencia administrativa el criterio rector es la razonabilidad. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De manera que, procede la revisión judicial cuando el organismo administrativo haya actuado de forma arbitraria, ilegal, irrazonable o que haya abusado de su discreción. *Íd.* A tono con lo anterior, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, y la jurisprudencia interpretativa limitan la revisión judicial a tres (3) aspectos: (1) si es apropiado el remedio concedido; (2) si las determinaciones de hechos están basadas en evidencia sustancial; (3) si las conclusiones de derecho fueron correctas. *Íd.* De conformidad, a tenor de la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, el dictamen final del ente administrativo sujeto a revisión judicial ha de contener la advertencia sobre el derecho a solicitar reconsideración o revisión judicial, adicional a las determinaciones de hechos y a las conclusiones de derecho. *Íd.*

Como vemos, al ejercer su facultad revisora, los tribunales no pueden descartar de forma absoluta el dictamen administrativo sin

antes haber examinado la totalidad del expediente y haber determinado que la agencia actuó irrazonablemente al ejercer su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra. Al mismo tiempo, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Íd*; *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, resuelto el 24 de junio de 2024. Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado o *expertise* que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Jta Planificación et al.,* 204 DPR 581 (2020). Ahora bien, cuando el razonamiento de la agencia sea incompatible o contrario al propósito y a la política pública del estatuto interpretado, los tribunales tienen libertad absoluta de descartar las conclusiones de dicho organismo administrativo, en aras de obtener un resultado sensato, lógico y razonable. *Otero Rivera v. Bella Retail Group, Inc. y otros,* supra.

De otra parte, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,*

supra. Por lo tanto, si al examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023).

### B. Proyecto para la Pre Reinserción a la Libre Comunidad

La Sección 19 de Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA Tomo I, establece como política pública del Estado, la reglamentación de las instituciones penales con el propósito de hacer posible su rehabilitación moral y social. En virtud de tal mandato, se aprobó el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011,* Plan de Reorganización Núm. 2 de 21 de noviembre de 2011 (Plan de Reorganización Núm. 2-2011), 3 LPRA Ap. XVIII. En el ejercicio de la facultad concedida por este, el 7 de septiembre de 2023, el DCR adoptó la Orden Administrativa, DCR-2023-03, *Proyecto para la Pre Reinserción a la Libre Comunidad.* En ella, estableció los criterios de elegibilidad y los parámetros de exclusión que los miembros de la población correccional deberán exhibir para beneficiarse del referido programa.

El enfoque principal del Proyecto para la Pre Reinserción es proveer a los confinados oportunidades de empleo con el objetivo de prepararlos para convertirse en personas independientes y productivas para nuestra sociedad, previo a reincorporarse a la libre comunidad. A esos efectos, el Artículo 9(e) del Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 9(e) otorga a toda persona detenida, sentenciada o convicta el derecho a "participar en programas de rehabilitación, tratamiento, estudio o trabajo que sean compatibles con su proceso de reintegración a la sociedad y sujeto a la previa evaluación correspondiente […]"

## III.

En su recurso, el recurrente imputa al DCR haber actuado de forma arbitraria, irrazonable e ilegal al no emitir una determinación final y, conforme a derecho, con respecto a su referido al Proyecto para la Pre-Reinserción y, con ello, someterlo a un proceso de espera, durante dos (2) años, alegando falta de espacios en el programa. Acredita mediante prueba documental que, desde el 21 de octubre de 2021, está bajo custodia mínima. Evidencia, también, haber culminado el programa de tratamiento para el control de impulsos, el 25 de marzo de 2019, sin historial de violencia durante su confinamiento. Añade que, el 2 de enero de 2024, terminó el Programa de Tratamiento Psico-Educativo Aprendiendo a Vivir sin Violencia. Asegura tener el apoyo de sus familiares y una oferta de empleo en la libre comunidad, particularmente, en el Hogar Esperanza de Vida y Fe 2 Inc., en Sabana Grande, Puerto Rico. Finalmente, aduce haber cumplido con el pago de la pena especial, de conformidad con la Ley Núm. 183-1998, Ley de Compensación y Servicios a las Víctimas y Testigos de Delito, 25 LPRA sec. 981, *et seq*.

Por su parte, el DCR argumenta en su *Escrito en Cumplimiento de Resolución* que la División de Remedios Administrativos actuó de conformidad con su reglamento al informar el estatus del referido al recurrente. Expone que, el organismo con autoridad para evaluar si un miembro de la población correccional debe participar en un programa de desvío es la Oficina de Desvío y Comunitarios del DCR (Oficina de Desvío). Asegura que, aunque no se ha emitido una decisión final sobre el referido objeto de este recurso, desde el mes de octubre de 2023, la Oficina de Desvío lo evalúa. Para evidenciar la atención brindada a este asunto, hace referencia a tres resoluciones interlocutorias emitidas por la Oficina de Desvío, a saber, el 11 de marzo de 2024, el 21 de mayo de 2024 y el 10 de febrero de 2025. Alega que, en esta última, la Oficina de Desvío pospuso la decisión hasta tanto obtuviera la Certificación de

Orientación de Personas Convictas Por Delitos Sexuales y Abuso Contra Menores, a tenor de la Ley Núm. 266-2004, la cual el DCR acredita haber obtenido, el 11 de abril de 2025.[5]

Luego de un sosegado estudio del recurso de epígrafe, de la comparecencia del DCR y de los documentos que ambas partes presentaron, concluimos que el DCR no incidió al emitir su dictamen. Se colige del expediente que, el DCR no ha dejado de atender el reclamo del recurrente, más bien, no lo ha ejecutado con la celeridad que el señor Toro Matos esperaría.

Ahora bien, toda vez que el DCR hizo constar que la Oficina de Desvío aplazó la decisión final hasta tanto obtuviera la Certificación de Orientación de Personas Convictas Por Delitos Sexuales y Abuso Contra Menores, la cual obra en el expediente, exhortamos al DCR a atender con prontitud la *Solicitud de Remedio Administrativo* (Núm. B-1447-24) objeto de este recurso. Apercibimos al DCR que su inacción puede acarrear que el señor Toro Matos, miembro de la población correccional, inste un recurso de *mandamus.*

**IV.**

Por los fundamentos antes expuestos, se confirma la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[5] *Escrito en Cumplimiento de Resolución*, Anejo IV, págs. 19-22.